# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MICROBILT CORPORATION, | : | Case No.: 11-18143 |
|  | : |  |
| Debtor. | : | Honorable Michael B. Kaplan |

|  |  |  |
|---|---|---|
| MICROBILT CORPORATION., | : | Civil Action |
|  | : |  |
| Appellant, | : | Case No.: 13-04752 |
|  | : |  |
| v. | : | Honorable Anne E. Thompson |
|  | : |  |
| CHEX SYSTEMS, INC., GUNSTER, | : |  |
| YOAKLEY & STEWART, P.A., and | : |  |
| DAVID M. WELLS, | : |  |
|  | : |  |
| Appellees. | : |  |

## ON APPEAL FROM THE ORDERS OF THE UNITED STATES
## BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY
## HONORABLE MICHAEL B. KAPLAN PRESIDING

## APPELLEE BRIEF OF CHEX SYSTEMS, INC.

Derek J. Baker, Esquire (DB8783)
Lauren S. Zabel (12132010)
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: 609-987-0050
Fax: 609-951-0824
dbaker@reedsmith.com
lzabel@reedsmith.com

*Attorneys for Chex Systems, Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................1

II.   STATEMENT OF APPELLATE JURISDICTION ........................2

III.  STANDARD OF REVIEW ..........................................................2

IV.  STATEMENT OF ISSUES ON APPEAL .....................................4

V.   STATEMENT OF THE CASE .......................................................4

    A.   The Original Litigation..........................................................4

    B.   The MicroBilt and Chex Relationship....................................6

    C.   MicroBilt and CLV File Bankruptcy Proceedings..................6

    D.   Adversary Complaint.............................................................7

    E.   Chex Motion to Dismiss..................................................... 10

    F.   Gunster Motion for Summary Judgment............................. 14

    G.   Motion to Amend ............................................................... 16

VI.  SUMMARY OF ARGUMENT .................................................. 17

VII.  ARGUMENT ........................................................................... 19

    A.   MicroBilt Has Not Established that the Bankruptcy Court
        Committed a Clear Error in Dismissing the Tortious Interference
        Counts of the Complaint in Favor of Arbitration............................... 19

    B.   The Bankruptcy Court Properly Denied MicroBilt's Motion to
        Amend on the Basis that the Proposed Amendment Would be
        Futile.................................................................................. 25

        i.    Failure to Plead Duty of Confidentiality................................... 27

        ii.   Failure to Identify Lost Customers ......................................... 32

        iii.  Application of Florida Absolute Litigation Immunity
              Privilege ....................................................................... 34

VIII. CONCLUSION........................................................................ 40

# TABLE OF AUTHORITIES

## Cases

*Advanced Oral Tech., L.L.C. v. Nutrex Research, Inc.,*
  10-5303, 2011 WL 1080204 (D.N.J. Mar. 21, 2011)..........................................33

*American Millennium Ins. Co. v. First Keystone Risk Retention Group,*
  332 Fed. Appx. 787 (3d Cir. 2009)........................................................................33

*Collins & Aikman Prods. Co. v. Building Sys., Inc.,*
  58 F.3d 16 (2d Cir. 1995) ........................................................................................21

*Component Hardware Group, Inc. v. Trine Rolled Moulding Corp.,*
  No. Civ. A. 05–891(MLC), 2005 WL 1514190 (D.N.J. June 27, 2005) ............29

*Doe v. Division of Youth & Family Servs.,*
  148 F. Supp.2d 462 (D.N.J. 2001)........................................................................26

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,*
  950 So. 2d 380 (Fla. 2007) ................................................................35, 36, 37, 39

*Gay v. Petsock,*
  917 F.2d 768 (3d Cir. 1990) ....................................................................................26

*Green Tree Financial Corp.-Alabama v. Randolph,*
  531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) .........................................20

*Henkels & McCoy, Inc. v. Adochio,*
  138 F.3d 491 (3d Cir. 1998) ........................................................................3, 18, 22

*In re Catanzareti,*
  No. 09-2666, 2009 WL 3424176 (D.N.J. Oct. 20, 2009)......................................3

*In re Combustion Eng'g, Inc.,*
  391 F.3d 190 (3d Cir. 2004) ............................................................................3, 26

*In re Mintze,*
  434 F.3d 222 (3d Cir. 2006) ....................................................................................20

*In re Russo,*
  No. 13093132, 2013 4080603 (D.N.J. Aug. 13, 2013) .........................................3

*In re Spansion, Inc.,*
  507 Fed. Appx. 125 (3d Cir. 2012)..........................................................................3

*In re Top Grade Sausage, Inc,*
  227 F.3d 123 (3d Cir. 2000) ..............................................................................3, 26

*Int'l Union, UAW v. Mack Trucks, Inc.*,
   820 F.2d 91 (3d Cir. 1987) ................................................................................ 4

*ITT Telecom Products v. Dooley*,
   214 Cal. App. 3d 307 (Cal. App. 1989) ........................................................... 39

*Kittay v. Landegger (In re Hagerstown Fiber, Ltd. P'ship)*,
   277 B.R. 181 (Bankr. S.D.N.Y. 2002) ............................................................. 21

*Lawrence v. Xerox Corp.*,
   56 F. Supp. 2d 442 (D.N.J. 1999) ............................................................... 3, 25

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States
   Fire Insurance Company*,
   639 So. 2d 606 (Fla. 1994) ......................................................................... 15, 36

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*,
   191 F. Supp 2d 1346 (M.D. Fla. 2002) ............................................................ 31

*Metromedia Energy, Inc. v. Griffin*,
   No. 10-1692, 2011 WL 4343801 (D.N.J. Sept. 13, 2011) ................................ 34

*MicroBilt Corp. v. Fidelity Nat'l Info. Servs., Inc.*,
   484 B.R. 56 (Bankr. D.N.J. 2012) ............................................................. passim

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ................................... 20

*Nami v. Fauver*,
   82 F.3d 63 (3d Cir. 1996) ............................................................................... 26

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ............................................................................ 26

*Pactiv Corp. v. Perk–Up, Inc.*,
   No. 08-5072, 2009 WL 2568105 (D.N.J.  2009) .............................................. 33

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*,
   7 F.3d 1110 (3d Cir. 1993) ............................................................................. 20

*PSC, S.A. v. PriceSmart, Inc.*,
   No. 07-21383, 2007 WL 2781021 (S.D. Fl. Sept. 19, 2007) ............................ 29

*Schlumberger Res. Mgmt. Servs. v. CellNet Data Sys.*,
   327 F.3d 242 (3d Cir. 2003) ..................................................................... 2, 3, 25

*Sethecot Collection v. Drbul*,
   669 So.2d 1076 (Fla. Dist. Ct. App. 1996) ...................................................... 30

*Skehan v. Board of Trustees of Bloomsburg State College*,
  590 F.2d 470 (3d Cir. 1978) ................................................................ 26

*Stateside Mach. Co., Ltd. v. Alperin*,
  591 F.2d 234 (3d Cir. 1979) ................................................................ 20

*Terminex Int'l Co., L.P. v. Michaels*,
  668 So.2d 1013 (Fla. Dist. Ct. App. 1996)......................................... 24

*TWC Cable Partners v. Cableworks, Inc.*,
  966 F. Supp. 305 (D.N.J. 1997)........................................................... 26

*Unistar Corp. v. Child*,
  415 So. 2d 733 (Fla. Dist. Ct. App. 1982) .......................................... 31

## Statutes

11 U.S.C. § 101 ........................................................................................ 6

28 U.S.C. § 1334 (2006) .......................................................................... 2

28 U.S.C. § 158 (2006) ............................................................................ 2

Cal. Civ. Code § 3426.11 ....................................................................... 38

Fla. Stat. § 688.001 ............................................................................... 10

## Rules

Fed. R. Bankr. P. 7015 ........................................................................... 25

Fed. R. Bankr. P. 8013 ............................................................................. 2

Fed. R. Civ. P. 12(b)(6)..................................................................... 32, 34

Fed. R. Civ. P. 15(c)............................................................................ 3, 25

## I.   **INTRODUCTION**

The United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") has extensively and thoughtfully reviewed and analyzed the contractual relationship between Chex Systems, Inc. ("Chex") and MicroBilt Corporation ("MicroBilt").   That review and analysis resulted in a detailed reported decision delineating the scope and application of the arbitration clause in that relationship.   *See MicroBilt Corp. v. Fidelity Nat'l Info. Servs., Inc. (In re MicroBilt Corp.)*, 484 B.R. 56, 63 (Bankr. D.N.J. 2012).   The Bankruptcy Court's application of that thorough analysis to the  Complaint filed by MicroBilt in this adversary proceeding shows no mistake – much less any "definite or firm conviction that a mistake was made" which is necessary to justify MicroBilt's present appeal.

Similarly, the Bankruptcy Court's review of MicroBilt's request to replead its Complaint with claims which would not withstand a motion to dismiss also displays the same thoughtful and practical approach that does not rise to any errant conclusion of law or clearly erroneous application of facts.   Even with MicroBilt's opportunity to present six (6) separate briefs on this topic – including the opening brief here – MicroBilt has still been unable to escape the indisputable truth:  its present claims seek to impose liability for actions taken by Chex in litigation.   The Bankruptcy Court's detailed analysis that the Florida absolute litigation immunity

privilege bars claims stemming from actions taken in litigation pending in Florida follows wells established Florida precedent.

The Bankruptcy Court's decisions are all grounded in thoughtful, thorough analytical reasoning based on well-settled legal principles and factual conclusions which are not clearly erroneous. For all these reasons, the Court should affirm the Bankruptcy Court.

## II.    STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 158 and 1334 (2006).

## III.    STANDARD OF REVIEW

The standard of review for factual findings is set forth Fed. R. Bankr. P. 8013 which provides "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Findings of fact are clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Schlumberger Res. Mgmt. Servs. v. CellNet Data Sys.* (*In re CellNet Data Sys.*), 327 F.3d 242, 244 (3d Cir. 2003) (internal quotations and citations omitted).

The Bankruptcy Court's legal conclusions are reviewed *de novo*. *Id.* Mixed questions of law and fact are reviewed by the District Court "under a mixed

standard, affording a clearly erroneous standard to the review of the lower court's interpretation and application of those facts to legal precepts." *Id.* (citing *In re Top Grade Sausage, Inc*, 227 F.3d 123, 125 (3d Cir. 2000). "Contract interpretation, i.e., determining the intent of the parties under a contract, is reviewable on a clearly erroneous basis." *In re Catanzareti*, No. 09-2666, 2009 WL 3424176, at *3 (D.N.J. Oct. 20, 2009). In other words, the District Court "exercises plenary review of the legal operation of the [] agreement, but [can] vacate the [lower court's] contract interpretations and subsidiary factual findings only if they are clearly erroneous." *Henkels & McCoy, Inc. v. Adochio*, 138 F.3d 491, 496 (3d Cir. 1998) (emphasis added).

A motion to amend pursuant to Fed. R. Civ. P. 15(c) is committed to the sound discretion of the court. *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 449 (D.N.J. 1999). "An exercise of discretion by the bankruptcy court is conclusive unless it constitutes an abuse of discretion." *In re Russo*, No. 13093132, 2013 4080603, at *2 (D.N.J. Aug. 13, 2013). *See also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 n.19 (3d Cir. 2004); *In re Top Grade Sausage*, 227 F.3d at 125. An abuse of discretion exists only when "the [lower] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Spansion, Inc.*, 507 Fed.

Appx. 125, 128 (3d Cir. 2012) (non-precedential) (quoting *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)).

## IV.   STATEMENT OF ISSUES ON APPEAL

While MicroBilt postulates various questions in this appeal, as it pertains to Chex, this appeal focused on three (3) simple and easily answered questions:

1.   Whether the Bankruptcy Court properly dismissed Counts IV through VII of the Complaint in favor of arbitration?

2.   Whether the Bankruptcy Court properly exercised its discretion in denying MicroBilt's request to amend its Complaint because it found that the claims asserted in such amendment would be futile?

3.   Whether the Bankruptcy Court properly dismissed Counts VII, IX and X of the Complaint by concluding that relief was barred by the Florida absolute litigation immunity privilege?

## V.   STATEMENT OF THE CASE

### A.   The Original Litigation

The present appeal stems from litigation filed by Chex against parties other than MicroBilt.  Well prior to 2009, Chex was a party to an agreement with DP Bureau, Inc. ("DP Bureau") and CL Verify, LLC ("CLV"), pursuant to which DP Bureau and CLV would purchase Debit Reports on certain consumers from Chex and resell them to certain end users.  On November 4, 2010, Chex, by and through

its counsel – the Gunster Defendants[1], filed a complaint against DP Bureau and CLV in the United States District Court for the Middle District of Florida under case number 8:12-cv-1196-T-30TFW (MicroBilt App. Ex. 34) (the "<u>Florida Complaint</u>"). The Florida Complaint related to DP Bureau and CLV's failure to pay for services and products from Chex. When the Florida Complaint was filed, certain documents, including invoices identifying Debit Reports purchased by DP Bureau and CLV for certain end users, were attached thereto as exhibits (the "<u>Attachments</u>"). (MicroBilt App. Ex. 1 (Compl.) at ¶ 36.) The Florida Complaint did not in any way name or reference MicroBilt. (*See generally* MicroBilt App. Ex. 34.)

In response to the Florida Complaint, DP Bureau and CLV counterclaimed against Chex alleging that the Attachments contained confidential information (but failed to identify the basis for such confidentiality). (*See generally* MicroBilt App. Ex 7 (Gunster Motion for Summary Judgment) at Ex. D.) While Chex did not concede that the Attachments were confidential in any way, Chex proposed to submit the Attachments under seal by agreement. Both DP Bureau and CLV refused to consent to a submission under seal and forced Chex to submit a motion to seal the Attachments. (*See generally* MicroBilt App. Ex. 7 at Ex. E.) DP Bureau

---

[1] Gunster, Yoakley & Stewart, P.A. (the "<u>Gunster Firm</u>") and David M. Wells ("<u>Wells</u>" and collectively with the Gunster Firm, the "<u>Gunster Defendants</u>" and collectively with Chex, the "<u>Appellees</u>").

and CLV opposed Chex's motion to seal, but the motion to seal was ultimately granted over DP Bureau and CLV's objection. (*See generally* MicroBilt App. Ex. 7 at Exs. F, G.) Proceedings on the Florida Complaint then proceeded in due course. The filing of the CLV Bankruptcy Case (defined below) stayed the proceedings on the Florida Complaint.

**B.    The MicroBilt and Chex Relationship**

Chex and MicroBilt are parties to an Information Resale Agreement dated August 26, 2009 (the "Resale Agreement"). (*See* MicroBilt App. Ex. 9 (Cert. of F. Levin) at Ex. B (Resale Agreement) at 1.) Like DP Bureau and CLV did under their separate arrangement with Chex, MicroBilt purchases Debit Reports from Chex on certain consumers, which MicroBilt then resells to end users. (MicroBilt App. Ex. 1 (Compl.) at ¶¶ 10-13.) MicroBilt aptly refers to the Resale Agreement as "[t]he contract at issue in this case". (*See* Appellate Brief of Appellant, MicroBilt Corporation, App. Docket No. 6 at 5 (the "Opening Brief").)

**C.    MicroBilt and CLV File Bankruptcy Proceedings**

On March 18, 2011, MicroBilt filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., (the "Bankruptcy Code") with the Bankruptcy Court commencing case No. 11-18143-MBK   ("MicroBilt's Bankruptcy Case"). On March 23, 2011, CLV filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code

with the Bankruptcy Court commencing case No. 11-18715-MBK ("CLV's Bankruptcy Case").   MicroBilt's Bankruptcy Case and CLV's Bankruptcy Case were jointly administered under case no. 11-18143.

**D.   Adversary Complaint**

On February 21, 2012, MicroBilt filed its Adversary Complaint against Chex and the Gunster Defendants with the Bankruptcy Court [Adv. Docket No. 1] (MicroBilt App. Ex. 1) (the "Complaint").   The Complaint is fundamentally premised on a single allegation: that the Attachments to the Florida Complaint contained Confidential Information protected by the Resale Agreement.

As MicroBilt expressly states in the Complaint:

> The Information Resale Agreement defined confidential information as "a party's proprietary or confidential information that has been designated as Confidential Information or that, by nature of the circumstances surrounding the disclosures, ought to, in good faith be treated as confidential or proprietary information" ("Confidential Information").

(MicroBilt App. Ex. 1 (Compl.) at ¶ 18.)

In Paragraph 20 of the Complaint, MicroBilt asserts that "MicroBilt's customer list, the amount of transactions in a given period of time, the pricing terms, and other confidential details relating to its customers are Confidential Information and trade secrets of MicroBilt." (MicroBilt App. Ex. 1 (Compl.) at ¶ 20.)   MicroBilt goes on to further allege:

41.    Chex failed to inform Gunster and Wells that the documents and information it provided to Gunster and Wells contained Confidential Information and trade secrets of MicroBilt and that the documents and information could not and should not be disclosed to the public.

***

43.    Gunster and Wells disclosed MicroBilt's Confidential Information and trade secrets by filing the invoices with the Court in the Chex/DP Lawsuit.

(*Id.* at ¶¶ 41-43.)

In essence, MicroBilt alleged that the Attachments to the Florida Complaint, Chex breached the Resale Agreement, tortiously interfered with MicroBilt's actual and prospective contracts and misappropriated MicroBilt's trade secrets.[2]

At the time Chex filed its motion to dismiss, the Complaint asserted nine (9) counts against Chex.[3]   The first two (2) counts of the Complaint were clearly denominated as "breach of contract" related to the Resale Agreement.

Count II is titled a Breach of the Resale Agreement and states:

---

[2] MicroBilt contends that CLV merged with MicroBilt through a series of corporate transactions unarticulated by MicroBilt, and CLV assigned all of its end-users to MicroBilt.  MicroBilt alleges that through this assignment, the information on the Attachments became "Confidential Information" of MicroBilt.  This is inconsistent with CLV's original counterclaim in response to the Florida Complaint.

[3] Count I of the Complaint was dismissed pursuant to the Stipulation of Dismissal with Prejudice of Count I of the Complaint between MicroBilt and Chex filed with the Bankruptcy Court on January 2, 2013.  (*See* MicroBilt App. Ex. 8 (Chex Mot. to Dismiss) at n.3)

52.    MicroBilt and Chex entered into an Information Resale Agreement whereby the parties defined Confidential Information and agreed not to share that information with other parties.

\*\*\*

54.    Chex failed to exercise reasonable care to protect MicroBilt's Confidential Information when it provided, among other things, MicroBilt's client list and pricing terms, to its attorneys who then attached that Confidential Information to a publically filed complaint in Florida.

(MicroBilt App. Ex. 1 (Compl.) at ¶¶ 52-54.)[4]

In addition, the Complaint raised four (4) additional counts nominally called tortious interference (the "Tortious Interference Counts") against Chex.  Counts VI through VII nominally assert tortious interference claims premised upon Chex's alleged disclosure of Confidential Information to the Gunster Defendants (in Counts IV and VI) and to the public (in Counts V and VII) by filing the Florida Complaint.  Specifically, in Count IV, MicroBilt avers that "Chex interfered with MicroBilt's contracts with its end users by disclosing Confidential Information to Gunster and Wells."  (*Id.* at ¶ 63.)  Similarly, in Count V, MicroBilt avers that "Chex interfered with MicroBilt's contracts with its end users by disclosing Confidential Information to the public."  (*Id.* at ¶ 72.)  In Count VI, MicroBilt asserts that "Chex intentionally and without justification interfered with

---

[4] Count III of the Complaint also asserts an undeniable breach of the Resale Agreement.  The allegations in Count III are not relevant to the instant appeal and will not be addressed herein.

[MicroBilt's relations with prospective end-users] by disclosing Confidential Information to Gunster and Wells." (*Id.* at ¶ 81.) Likewise, in Count VII, MicroBilt asserts that "Chex intentionally and without justification interfered with [MicroBilt's relations with prospective end-users] by disclosing Confidential Information to the public." (*Id.* at ¶ 88.)

Finally, the Complaint raised three (3) additional counts against Chex (the "Trade Secret Counts") nominally called violations of Florida's Uniform Trade Secret Act, Fla. Stat. 688.001 *et. seq.* ("FUTSA"). In Count VIII, MicroBilt alleged that Chex's sending the Attachments to its counsel, the Gunster Defendants, constituted a violation of the FUTSA. (*See* MicroBilt App. Ex. 1 (Compl.), at ¶¶ 93-98.) In Count IX, MicroBilt alleged that affixing the Attachments to the Florida Complaint violated FUTSA. (*Id.* at ¶¶ 99-105.) Finally, in Count X, MicroBilt alleged that the disclosure of Confidential Information to the Gunster Defendants and the public demonstrated "a complete lack of disregard for MicroBilt's Trade Secret and Confidential Information." (*Id.* at ¶¶ 112.)[5]

### E.    Chex Motion to Dismiss

On January 15, 2013, Chex filed its Motion to Dismiss Adversary Proceeding and filed an amended brief in support thereof on February 22, 2013 [Adv. Docket Nos. 19, 24] (MicroBilt App. Exs. 6, 8) (the "Chex Motion to

---

[5] (*See generally* MicroBilt App. Ex. 1 (Compl.), at ¶¶ 106-113)

Dismiss"). In the Chex Motion to Dismiss, Chex noted that each of the counts asserted against Chex in the Complaint arise out of or relate to the disclosure of Confidential Information under to the Resale Agreement.   Therefore, Chex requested that the claims be dismissed in favor of arbitration pursuant to the terms of the Resale Agreement.[6]

Chex plainly noted – and MicroBilt does not, and cannot, dispute – that the Resale Agreement contains a clear and unambiguous mandatory arbitration clause. The Resale Agreement provides any claim or dispute "arising out of or relating to" the Resale Agreement "shall be settled by binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules (including Procedures for Large, Complex Commercial Disputes) of the American Arbitration Association[.]"   (MicroBilt App. Ex. 9 (Cert. of F. Levin) at Ex B. (Resale Agreement) at ¶ 29.)

MicroBilt opposed the Chex Motion To Dismiss [Adv. Docket No. 25] (MicroBilt App. Ex. 9) (the "Opposition Brief").   The Bankruptcy Court entertained oral argument on the Chex Motion to Dismiss on March 22, 2013 (the "March Hearing").   Thereafter, Chex and MicroBilt each submitted post-trial

---

[6]   In the alternative, Chex argued that the Bankruptcy Court should permissibly abstain from adjudicating the claims asserted against Chex in the Complaint. (MicroBilt App. Ex. 8.)  The Bankruptcy Court did not reach this issue.

submissions [Adv. Docket Nos. 26, 27, 29, respectively] (MicroBilt App. Exs. 12-14) (the "Post-Hearing Submissions").

The Bankruptcy Court rendered its decision by oral ruling at a hearing on May 7, 2013 (the "Ruling Hearing"). At the Ruling Hearing, the Bankruptcy Court held that the breach of contract claims asserted in Counts II and III clearly assert breaches of the Resale Agreement, which must be arbitrated pursuant to the arbitration provision of the Resale Agreement. (MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 7.) The Bankruptcy Court also noted that MicroBilt quoted the definition of Confidential Information set forth in the Resale Agreement in the Complaint and then pled the Tortious Interference Counts with specific reference to – and employed the capitalized term of – Confidential Information. Based on MicroBilt's use of the capitalized phrase "Confidential Information" throughout the Tortious Interference Counts, the Bankruptcy Court concluded that those claims must also be dismissed in favor of arbitration. (MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 8-9.)

The Bankruptcy Court denied the Chex Motion to Dismiss as to the Trade Secret Counts, but stayed proceedings on those counts until the conclusion of arbitration of Counts II through VII. Consistent with its determinations at the Ruling Hearing, on May 20, 2013, the Bankruptcy Court issued its Order

Resolving Chex Systems, Inc.'s Motion to Dismiss the Adversary Complaint [Adv. Docket No. 37] (MicroBilt App. Ex. 18) (the "Chex Motion to Dismiss Order").

In an attempt to re-argue the very issues correctly determined by the Bankruptcy Court in rendering its decision at the Ruling Hearing, MicroBilt filed its Motion for Reconsideration of May 20, 2013 Order Resolving the Chex Motion to Dismiss Adversary Proceeding [Adv. Docket No. 40] (MicroBilt App. Ex. 19) (the "Motion for Reconsideration").  After the Motion For Reconsideration was fully briefed, the Bankruptcy Court entertained oral argument on July 8, 2013 (the "Reconsideration Ruling Hearing").

At the Reconsideration Ruling Hearing, the Bankruptcy Court concluded that the Motion for Reconsideration did not present any intervening change in controlling law or new evidence, and there was no need to correct a clear error which would justify reconsideration.  (*See* MicroBilt App. Ex. 33 (Tr. of Reconsideration Ruling Hrg.) at 38-39.)  Therefore, the Bankruptcy Court denied the Motion For Reconsideration by Order Resolving Plaintiff's Motion for Reconsideration of This Court's May 20, 2013 Order [Adv. Docket No. 52] (MicroBilt App. Ex. 29) (the "Reconsideration Order").[7]

---

[7] The Bankruptcy Court did reconsider the Chex Motion to Dismiss Order for the limited purpose of removing a date certain by which MicroBilt was required to commence arbitration proceedings consistent with the Chex Motion to Dismiss Order.

Thereafter, in an effort to create an appellate avenue, MicroBilt asked the Bankruptcy Court to dismiss the Trade Secret Counts of the Complaint against Chex.  On July 16, 2013, the Bankruptcy Court acquiesced to MicroBilt's request and entered MicroBilt's proposed Order Resolving Counts VII, IX, and X Against Chex Systems, Inc. [Adv. Docket No. 57] (MicroBilt App. Ex. 31) (the "Trade Secret Dismissal Order").[8]

### F.    Gunster Motion for Summary Judgment

On January 15, 2013, the Gunster Defendants filed their Motion for an Order (A)(I) Determining that this Court Cannot Enter Final Judgments in this Adversary Proceeding, (II) Permissibly Abstaining From and Dismissing the Adversary Proceeding, or Alternatively, (B) Granting Summary Judgment and Dismissing Counts IV, X, and XI of the Complaint with Prejudice [Adv. Docket No. 20] (MicroBilt App. Ex. 7) (the "Gunster Motion for Summary Judgment").  In the Gunster Summary Judgment Motion, the Gunster Defendants noted that the claims asserted against the Gunster Defendants in Counts IX through XI of the Complaint were barred by the Florida absolute litigation immunity privilege. (MicroBilt App. Ex. 7.)

---

[8] Chex notes that it is rather disingenuous of MicroBilt to now somehow assert that the Bankruptcy Court erred in dismissing the Trade Secrets Counts when such counts were dismissed at MicroBilt's request in order to expedite this very appeal.

MicroBilt filed the Opposition Brief and the Gunster Defendants replied. After the Gunster Motion for Summary Judgment was fully briefed, the Bankruptcy Court held oral argument and received Post-Hearing Submissions. At the Ruling Hearing, the Bankruptcy Court held: "it is well-settled under Florida law that the absolute immunity must be afforded to any act occurring during the course of a judicial proceeding so long as the act has some relation to the proceeding." (MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 12) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Company*, 639 So. 2d 606, 608 (Fla. 1994)). The Bankruptcy Court recited the facts alleged in the Complaint and concluded: "[t]he challenged conduct attaching the invoices occurred with complete judicial oversight and the alleged harmed party had the opportunity to seek sanctions against the alleged offending party with the benefit of the court filed documents as proof." (*Id.* at 14.) Accordingly, the Bankruptcy Court granted summary judgment in favor of the Gunster Defendants and entered its Order and Judgment Granting Summary Judgment and Dismissing Counts IX, X and XI of the Complaint, with Prejudice, as to Defendants Gunster, Yoakley & Stewart, P.A. and David M. Wells [Adv. Docket No. 36] (MicroBilt App. Ex. 17) (the "Gunster Summary Judgment Order").

Predictably, MicroBilt again attempted to re-argue the same issues correctly determined by the Bankruptcy Court by filing a motion for reconsideration [Adv. Docket No. 41] (MicroBilt App. Ex. 20) (the "Gunster Motion for Reconsideration"). Like the Motion for Reconsideration, the Gunster Motion for Reconsideration did not identify any intervening change in controlling law or new evidence, and did not demonstrate any need to correct a clear error. Therefore, after the Gunster Motion For Reconsideration was fully briefed and oral argument was held, the Bankruptcy Court entered the Order Denying Motion for Reconsideration [Adv. Docket No. 53] (MicroBilt App. Ex. 30).

### G.    Motion to Amend

MicroBilt also filed a Motion for Leave to File a First Amended Complaint [Adv. Docket No. 30] (MicroBilt App. Ex. 13) (the "Motion to Amend"), in which MicroBilt attempted to replead the same counts asserted in the Complaint but without reference to the capitalized term "Confidential Information". MicroBilt appended a copy of its proposed amended complaint [Adv. Dkt. No. 35 at Ex. A] (MicroBilt App. Ex. 13 at Ex. A) (the "Proposed Amended Complaint") to the Motion to Amend.   In its opposition to the Motion to Amend, Chex noted, among other things, that amendment would be futile because the claims asserted against Chex in the proposed amended complaint would be barred by Florida's absolute

- 16 -

litigation privilege.   The Bankruptcy Court reviewed the proposed amended complaint and in its discretion held:

> Given that the Court determines the actions are all --- all causes of actions are premised on the same factual scenario of documents being provided by Chex to Gunster, and then attached to pleadings filed in Florida litigation, that the litigation privilege that's in effect in Florida pursuant to statute and common law would protect Chex, as well as the Gunster Defendants.

(MicroBilt App. Ex. 33 (Tr. of Reconsideration Ruling Hrg.) at 40.)   To highlight its conclusion on futility the Bankruptcy Court concluded: "[t]he Court does not see it appropriate to await yet a new 12(b)(6) filing, or a 12(c) judgment on the pleadings motion, or another summary judgment motion, when the Court finds that --- and determines that the Florida litigation immunity privilege applies not only to the Gunster defendants but to Chex."   (MicroBilt App. Ex. 33 (Tr. of Reconsideration Ruling Hrg.) at 39).   Accordingly, the Bankruptcy Court entered the Order Denying MicroBilt's Motion for Leave to File a First Amended Complaint [Adv. Docket No. 51] (MicroBilt App. Ex. 28) (the "Motion to Amend Order").

## VI.   SUMMARY OF ARGUMENT

This appeal stems from one simple allegation – that Chex disclosed allegedly Confidential Information to the Gunster Defendants, who then attached that Confidential Information to the Florida Complaint.   After reviewing the allegations in the Complaint, the Bankruptcy Court properly concluded that the

certain counts of the Complaint related to – and specifically relied upon – the Resale Agreement. Given the mandatory arbitration clause in the Resale Agreement, the Bankruptcy Court properly dismissed those counts in favor of arbitration.

While the existence, enforceability and scope of the arbitration provision of the Resale Agreement is subject to a plenary review, where the appeal concerns the Bankruptcy Court's interpretation of the contract at issue, that decision is reviewed only for clear error. *Henkels & McCoy, Inc.*, 138 F.3d at 496. Here, the Bankruptcy Court's interpretation of the allegations in the Complaint and application to the arbitration clause in the Resale Agreement is reviewed for clear error. *Id.* Given the Bankruptcy Court's thorough and detailed analysis of the Resale Agreement and its application in a reported decision and at the Ruling Hearing, there can be no conclusion that a mistake has been made. *See generally In re MicroBilt Corp.*, 484 B.R. at 63; MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) Accordingly, the Bankruptcy Court's determination must be affirmed.

Similarly, the Bankruptcy Court's conclusion that amendment of the Complaint would be futile is not an abuse of discretion. In opposition to the Motion to Amend, Chex set forth three (3) independent bases for the Bankruptcy Court to conclude that amendment of the Complaint would be futile. It is clear that the Bankruptcy Court did not abuse its discretion in determining that amendment

to assert the claims set forth in the Proposed Amended Complaint would be futile in light of Florida's absolute litigation immunity privilege or otherwise. Accordingly, the Bankruptcy Court's determinations must be affirmed.

## VII.  **ARGUMENT**

### A.  **MicroBilt Has Not Established that the Bankruptcy Court Committed a Clear Error in Dismissing the Tortious Interference Counts of the Complaint in Favor of Arbitration**

This appeal is the latest of MicroBilt's unrelenting attempts to avoid the arbitration of claims which clearly fall within the scope of the valid arbitration provision of the Resale Agreement.  MicroBilt cannot avoid the fact that it pled the Tortious Interference Counts by reference to "Confidential Information" as that term is defined in the Resale Agreement.  (*See, e.g.,* MicroBilt App. Ex. 1 (Compl.) at ¶¶ 63, 72, 81, 88.)  As is evident from MicroBilt's Opposition Brief, the Motion for Reconsideration and the Opening Brief here, MicroBilt simply disagrees with the Bankruptcy Court's interpretation of the language chosen by MicroBilt in its Complaint.  (*See* MicroBilt App. Exs. 9 (Opp. Br.), 19 (Mot. for Reconsideration).   MicroBilt's Opening Brief utterly fails to demonstrate that the Bankruptcy Court committed any error – much less a clear error – in dismissing the Tortious Interference Counts and declining to reconsider that decision.

MicroBilt does not dispute the Supreme Court precedent holding that a matter <u>must</u> be submitted to arbitration when a valid agreement to arbitrate exists

and the dispute falls within the substantive scope of that agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1114 (3d Cir. 1993); s*ee also In re MicroBilt Corp*, 484 B.R. at 63. "Once it is established that a valid arbitration clause exists, the burden of establishing that the claims are unsuitable for arbitration rests on the Plaintiffs as the party opposing arbitration." *In re MicroBilt Corp.*, 484 B.R.. at 63 (citing *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). MicroBilt also does not dispute that any doubts concerning the application of the arbitration clause must be resolved in favor of compelling arbitration. *Stateside Mach. Co., Ltd. v. Alperin*, 591 F.2d 234, 240 (3d Cir. 1979)[9].

Here, the Resale Agreement constitutes a valid and binding agreement with an enforceable arbitration provision. The very Resale Agreement at issue here was previously reviewed by the Bankruptcy Court in a detailed opinion issued in other litigation involving Chex and MicroBilt. *See generally In re MicroBilt Corp.*, 484 B.R. 56 (the "Arbitration Decision"). In the Arbitration Decision, the Bankruptcy

---

[9] It is also undisputed that the fact that a bankruptcy case is pending cannot alter the mandatory arbitration provisions in a contract unless the issues involve substantive, statutory bankruptcy rights that Congress has established would conflict with addressing matters through arbitration. *See In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006).

Court properly determined that the Resale Agreement contained a valid and binding arbitration provision with a "broad purview", which mandates that "[a]ny dispute, difference, controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration...." *Id.* at 62 (quoting Resale Agreement at ¶ 29).

Upon concluding that the Resale Agreement contains a valid and enforceable arbitration provision, the Bankruptcy Court noted that "[t]he task facing this Court is to review the averments in the Complaint to discern whether the disputes arise out or relate to the referenced contractual agreements." *Id.* at 64. The Bankruptcy Court further emphasized that "the court must consider the question in light of the allegations of the complaint, not the legal theories espoused." *Id.* (quoting *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 198 (Bankr. S.D.N.Y. 2002), which, in turn, cited *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20-21 (2d Cir. 1995)).

In that case, the Bankruptcy Court concluded that each and every claim asserted in the complaint underlying that case – including claims asserted under the Bankruptcy Code – arose out of or related to the Resale Agreement. *Id.* at 66. Predictably, MicroBilt sought – and was denied – reconsideration of the Arbitration Decision. MicroBilt initially appealed, but subsequently withdrew that appeal.

Here again, MicroBilt challenges what the Bankruptcy Court has already thoroughly reviewed and analyzed twice in the context of the Arbitration Decision and twice in this adversary proceeding. (*See generally* MicroBilt App. Exs. 15 (Tr. of Ruling Hrg.), 18 (Chex Mot. to Dism. Order), 29 (Reconsideration Order), 33 (Tr. of Reconsideration Ruling Hrg).) The existence, enforceability and scope of the arbitration provision of the Resale Agreement was detailed at length in the Arbitration Decision and reiterated by the Bankruptcy Court in the Ruling Hearing. *See In re MicroBilt Corp.*, 484 B.R. at 63-64; MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 7-8. MicroBilt does not attack the legal conclusions around the existence or the scope of the provision; rather MicroBilt only appeals the Bankruptcy Court's conclusion that the facts plead by MicroBilt – and found by the Bankruptcy Court – require submission to arbitration. MicroBilt's challenge of Bankruptcy Court's contract interpretations and subsidiary factual findings can only succeed if MicroBilt establishes that they are clearly erroneous. *Henkels & McCoy, Inc.*, 138 F.3d at 496. MicroBilt simply cannot establish that the Bankruptcy Court committed any error whatsoever when the Bankruptcy Court relied upon – and cited – the very allegations made by MicroBilt in its Complaint.

MicroBilt's assertion that the Bankruptcy Court committed a clear error in interpreting the Complaint is both disingenuous and ignores the plain language of the claims asserted in the Complaint. MicroBilt quoted the definition of

Confidential Information set forth in the Resale Agreement in the Complaint and then framed each of the counts asserted in the Complaint in terms of the alleged disclosure of the capitalized defined term "Confidential Information":

- Count IV – "Chex interfered with MicroBilt's contracts with its end users by disclosing <u>Confidential Information</u> to Gunster and Wells." (*Id.* at ¶ 63) (emphasis added).

- Count V – "MicroBilt has a contractual business relationship with each and every end user identified in the confidential documents attached by Defendants to the Complaint in the Chex/DP Lawsuit[,]" and "Chex interfered with MicroBilt's contracts with its end users by disclosing <u>Confidential Information</u> to the general public." (*Id.* at ¶¶ 71-72) (emphasis added).

- Counts VI and VII – "MicroBilt has a protectable interest arising from a reasonable expectation of economic advantage deriving from its pursuit of its business relationship with its actual and potential clients." (*Id.* at ¶ 80, 87 (Counts VI and VII)). "Chex intentionally and without justification interfered with that interest by disclosing <u>Confidential Information</u> to Gunster and Wells," (*Id.* at ¶¶ 81 (Count VI)), and "by disclosing <u>Confidential Information</u> to the general public." (*Id.* at ¶¶ 88 (Count VII)) (emphasis added).

- Counts VIII and IX – "The information contained in the documents attached to the Complaint is proprietary and confidential to MicroBilt and thus constitutes a trade secret." (*Id.* at ¶¶ 94, 100.)

- Count X – "Chex did not take any actions to protect MicroBilt's <u>Confidential Information</u> and Trade Secret from disclosure[,]" and such "failure to protect MicroBilt's <u>Confidential Information</u> and Trade Secret was willful and malicious." (*Id.*, ¶¶ 107-108) (emphasis added).

MicroBilt is obviously desperate to distance itself from the Resale Agreement in what is now its third attempt to avoid arbitration of these claims.

(*See generally* MicroBilt App. Exs. 9 (Opp. Br.), 19 (Reconsideration Mot.).)
MicroBilt previously acknowledged that claims are properly subject to arbitration
if the claim asserted requires "a reference to or construction of some portion of the
contract itself." (MicroBilt App. Ex. 9 (Opposition Br.) at 36 (quoting *Terminex
Int'l Co., L.P. v. Michaels*, 668 So.2d 1013 (Fla. Dist. Ct. App. 1996)).) Because
the Tortious Interference Counts "refer to confidential information as defined by
the resale agreement, the disclosure of which MicroBilt alleges is expressly
prohibited by Paragraph 17 of the resale agreement", the Bankruptcy Court
sensibly held that the "claims arise out of and relate to the resale agreement" and
"must be arbitrated for the reasons set forth in the [Arbitration Decision]."
(MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 8-9.)

    MicroBilt attempts to avoid arbitration by arguing that tort claims – just by
virtue of their nominal title – are not arbitable under the Resale Agreement.
(Opening Brief at 21-23.) However, MicroBilt ignores that the Bankruptcy Court
has also addressed this issue on several occasions. Nominally titled tortious
interference claims must nevertheless be arbitrated if they "arise out of" or "relate
to" the Resale Agreement. *See MicroBilt Corp. v. Fidelity Nat'l Info. Servs., Inc.
(In re MicroBilt Corp.)*, 484 B.R. 56, 64 (Bankr. D.N.J. 2012). The Bankruptcy
Court also made clear that "MicroBilt repeatedly refers to the parties' resale
agreement as the document which establishes Chex's obligation not to disclose any

confidential or proprietary information."   (MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 8.)  MicroBilt fails to establish a single reason in law or fact contradicting the Bankruptcy Court's well-reasoned conclusions drawn from that fact.

MicroBilt's present appeal is nothing more than a restatement of the same arguments previously presented to and rejected by the Bankruptcy Court on numerous occasions.   Because MicroBilt does not dispute the well-settled precedent applicable to arbitration clauses, MicroBilt's appeal is simply a disagreement with the Bankruptcy Court's application of law to the of the facts presented in the Complaint.   MicroBilt's burden on appeal is to establish "the definite and firm conviction that a mistake has been committed" after review of the entire record in this case.   *In re CellNet Data Sys.*, 327 F.3d at 244.   MicroBilt failed to carry its burden; accordingly, the Bankruptcy Court must be affirmed.

### B.   The Bankruptcy Court Properly Denied MicroBilt's Motion to Amend on the Basis that the Proposed Amendment Would be Futile.

After the Bankruptcy Court issued the Chex Motion to Dismiss Order, MicroBilt filed its Motion to Amend seeking to file a complaint identical to the original Complaint but without reference to the Resale Agreement.   After a responsive pleading is filed, a motion to amend pursuant to Fed. R. Civ. P. 15(c) (incorporated by Fed. R. Bankr. P. 7015) is committed to the sound discretion of the court and should be granted only when "cause" is shown.   *See Lawrence v.*

*Xerox Corp.*, 56 F. Supp.2d 442, 449 (D.N.J. 1999) (citing *Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990); *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 492 (3d Cir. 1978)).

MicroBilt does not – and cannot – dispute that amendment should <u>not</u> be allowed when the proposed amendment would be futile. *See Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Doe v. Division of Youth & Family Servs.*, 148 F. Supp.2d 462, 477 (D.N.J. 2001) (citations omitted). Leave to amend would be futile when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him or her to relief. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *TWC Cable Partners v. Cableworks, Inc.*, 966 F. Supp. 305, 307 (D.N.J. 1997); *see also Oran*, 226 F.3d at 291 ("Futility is governed by the same standard of legal sufficiency that applies under rule 12(b)(6)[.]").

Because the Bankruptcy Court's power when deciding a motion to amend is discretionary, the standard of review on appeal is for an abuse of discretion. *See also In re Combustion Eng'g, Inc.*, 391 F.3d at 214 n.19; *In re Top Grade Sausage*, 227 F.3d at 125. The Bankruptcy Court did not abuse its discretion in denying the Motion to Amend because the proposed amendment would be futile for three (3) reasons. First, the Proposed Amended Complaint asserts that the Attachments are confidential but fails to allege any fact that would require such information to be

deemed confidential.   Second, MicroBilt failed to adequately plead its Tortious Interference Counts by failing to specifically identify any lost customers or potential customers.   Finally, the Bankruptcy Court followed well-settled Florida precedent interpreting the Florida absolute litigation immunity privilege.   The Bankruptcy Court's denial of the Motion to Amend was not an abuse of discretion because amendment would have been futile for each of the aforementioned reasons.

### i.   <u>Failure to Plead Duty of Confidentiality</u>

Each of the claims that MicroBilt would assert against Chex in the Proposed Amended Complaint is premised upon the same alleged fact originally pled in the Complaint – that Chex furnished the Attachments to the Gunster Defendants who attached such Attachments to the Florida Complaint.   (*See generally* MicroBilt App. Ex. 16 (Mot. to Amend) at Ex. A (Proposed Am. Compl.).)   The claims are identical to the claims previously dismissed by the Court in the Chex Motion to Dismiss Order.[10]   The fundamental difference between the Complaint and the Proposed Amended Complaint is the noticeable absence of any reference to the Resale Agreement.   MicroBilt clearly framed the Proposed Amended Complaint to

---

[10] In fact, MicroBilt emphasizes that Counts I through IV of the Proposed Amended Complaint would simply re-plead the Tortious Interference Counts of the Complaint premised upon Chex's distribution of the Attachments to the Gunster Defendants and the attachment thereof to the Florida Complaint. (*See* MicroBilt App. Ex. 16 (Mot. to Amend) at Ex. A (Proposed Am. Compl.).)

avoid arbitration, but in so doing MicroBilt failed to plead cognizable claims. MicroBilt asserted that Chex tortuously interfered with MicroBilt's existing and prospective new clients, and misappropriated MicroBilt's trade secrets, by disclosing the allegedly "confidential information". (*See, e.g.,* MicroBilt App. Ex. 16 (Mot. to Amend) at Ex. A (Proposed Am. Compl.) at ¶ 23 ("When Chex filed the Complaint in the Chex/DP Lawsuit, it attached to the Complaint proprietary and confidential information and trade secrets belonging to MicroBilt[.]").)  Yet, the Proposed Amended Complaint fails to establish any basis upon which the Attachments could be deemed confidential or obligating Chex to ensure the confidentiality thereof. (*See generally id.*) MicroBilt's notion that it can simply make information confidential without some underlying contractual basis is both misguided and legally unsound.  Because the Proposed Amended Complaint failed to plead the existence of a confidentiality agreement, none of the counts asserted therein were cognizable and amendment would be futile.

The Tortious Interference Counts asserted in the Proposed Amended Complaint were premised upon the notion that the Attachments are confidential.  It is axiomatic that a party cannot be accountable in tort for disclosing confidential information if that party had no obligation to maintain confidentiality of the information.  Similarly, when a tortious interference claim is premised upon the disclosure of confidential information, pleading a duty of confidentiality is integral

to the claim. *E.g., PSC, S.A. v. PriceSmart, Inc.*, No. 07-21383, 2007 WL 2781021, at *6 (S.D. Fl. Sept. 19, 2007) ("There was also testimony that Promerica takes steps to keep its list of customers confidential, including the provisions in the Master Agreement and Nicaragua Agreement which require that information which has defined [sic] this information as 'confidential.'") (citing *Component Hardware Group, Inc. v. Trine Rolled Moulding Corp.*, No. Civ. A. 05–891(MLC), 2005 WL 1514190, at *37 (D.N.J. June 27, 2005) (noting that "[t]here is no contract or non-compete agreement between the parties that prohibits Trine from using its knowledge of customers' identities that it acquired during its relationship with Component.")).   MicroBilt cites to absolutely no case law to the contrary. Unfortunately for MicroBilt, one cannot simply make information confidential with the wave of a proverbial magic wand.  A binding confidentiality agreement is required to establish a duty of confidentiality. *See PSC, S.A.*, 2007 WL 2781021, at *6.

It was incumbent upon MicroBilt to plead the existence of some duty of confidentiality in order to assert cognizable tortious interference claims premised upon the disclosure of allegedly confidential information.  Instead of asserting plausible, specific facts upon which it bases the conclusion that Chex is obligated to ensure that the Attachments are kept confidential, MicroBilt merely stated "Chex knew or should have known that [the Attachments] were proprietary,

confidential and trade secrets of MicroBilt." (MicroBilt App. Ex. 16 at Ex. A (Proposed Am. Compl.) at ¶ 15.) Whether Chex "knew or shown have known" that confidential information was contained in the Attachment, Chex had no obligation to ensure that the Attachments remained confidential without a confidentiality agreement. In the absence of a pled duty of confidentiality, MicroBilt has no actionable tortious interference claims against Chex. This is a fatal flaw in their claims against Chex.

The Trade Secret Counts in the Proposed Amended Complaint similarly fail due to MicroBilt's failure to plead a confidentiality agreement. As the cases cited by MicroBilt in the Opening Brief recognize, an entity can be enjoined from use of a customer list *only if an agreement between the parties precludes such use*. *See Sethecot Collection v. Drbul*, 669 So.2d 1076, 1078 (Fla. Dist. Ct. App. 1996) (recognizing that particular customer list is confidential within the workplace and therefore constituted a trade secret, but finding that "because the parties never entered into a non-compete agreement … the defendant is in no way enjoined from competing with the plaintiffs, including contacting and soliciting business from the sororities and fraternities that the plaintiffs have conducted business with."). In order for an action for the alleged misappropriation of trade secrets to be cognizable, MicroBilt must plead an agreement precluding distribution.

Because MicroBilt does not wish its claims to arise under or relate to the Resale Agreement, MicroBilt does not refer to the confidentiality provision of the Resale Agreement.  Without such reference, MicroBilt does not – and cannot – plead an explicit contractual duty of confidentiality.  Rather, MicroBilt seems to suggest that a duty of confidentiality exists – or should be implied by simple possession of information which could be confidential.

Yet MicroBilt cites no case in which a confidentiality obligation is implied by law other than in the employment context.  All the cases cited by MicroBilt involve the alleged misappropriation of a customer list in the context of an employee/employer relationship.   In those cases the lack of a written confidentiality agreement is not fatal because Florida law implies a duty of confidentiality into every employment contract.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp 2d 1346, 1351-52 (M.D. Fla. 2002) ("The law will import into every contract of employment a prohibition against the use of a trade secret by the employee for his own benefit, to the detriment of his employer, if the secret was acquired by the employee in the course of his employment.")  (quoting *Unistar Corp. v. Child*, 415 So. 2d 733, 734-35 (Fla. Dist. Ct. App. 1982)).  Unfortunately for MicroBilt, its relationship with Chex is not based on an employment contract.  MicroBilt has not cited a single case where a duty of

confidentiality is imposed in a commercial contract when it is not expressly provided in the contract.

Because MicroBilt was required – but failed – to establish the existence of a confidentiality agreement in order to assert plausible claims for tortious interference premised upon disclosure of "confidential information" and claims for misappropriation of trade secrets, the claims asserted in the Proposed Amended Complaint would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(b). Therefore, the amendment would have been futile.

### ii.   Failure to Identify Lost Customers

In addition to its failure to allege facts demonstrating a duty of confidentiality, the Tortious Interference Counts alleged in the Proposed Amended Complaint failed to state cognizable claims because MicroBilt also failed to allege any facts which would plausibly state a cause of action for tortious interference. "To state a claim for tortious interference with economic advantage under New Jersey law a claimant must allege (1) an existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit in the absence of the defendant's interference; and (5) damages

resulting from the defendant's interference." *Pactiv Corp. v. Perk–Up, Inc.*, No. 08-5072, 2009 WL 2568105, *11 (D.N.J. 2009) (citations omitted).  Importantly:

> [t]o sustain a claim of tortious interference, a plaintiff must do more than assert that it lost business. Rather it "must allege facts that show an existing or prospective economic or contractual relationship" for a "mere allegation of lost business does not suffice." Nor does the "claimed loss of ... unknown customers ... standing alone, state a claim for tortious interference with prospective business relations."

*Advanced Oral Tech., L.L.C. v. Nutrex Research, Inc.*, 10-5303, 2011 WL 1080204, *4 (D.N.J. Mar. 21, 2011).  Courts have dismissed claims for tortious interference where the claimant fails to identify the customers or potential customers that it lost because of its adversary's alleged wrongful conduct. *Id.*; *see also American Millennium Ins. Co. v. First Keystone Risk Retention Group*, 332 Fed. Appx. 787, 790 (3d Cir. 2009) (upholding dismissal of tortious interference claim where claimant failed to "identify a single, specific customer that [it] either lost or could have acquired by for Appellees' conduct.").

In pleading the Tortious Interference Counts in the Proposed Amended Complaint (and again in this Opening Brief), MicroBilt blatantly ignored established case law that MicroBilt must specifically state both the conduct which caused the loss – and the specific customer lost – to state a viable claim for tortious

interference under New Jersey law. *See Metromedia Energy, Inc. v. Griffin*, No. 10-1692, 2011 WL 4343801, at *3 (D.N.J. Sept. 13, 2011).[11]

In the Proposed Amended Complaint, MicroBilt did not name a single customer which it has lost as a result of any conduct alleged. Ignoring well-established case law, MicroBilt's Opening Brief baldly and disingenuously asserts: "MicroBilt's business was dramatically impacted because competitors actually obtained the disclosed customer lists, and took MicroBilt's customers." (Opening Brief, at 4.) This statement is completely unsupported by any allegation made in either the Complaint or the Proposed Amended Complaint. Despite its attempt to weave sweeping unalleged and unsupported factual statements into the appellate record, MicroBilt *still* fails to specifically identify any proposed lost customers. As a result, the Tortious Interference Counts of the Proposed Amended Complaint would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(b). Therefore, the amendment would have been futile.

### iii.   Application of Florida Absolute Litigation Immunity Privilege

The crux of MicroBilt's appeal stems from MicroBilt's argument that the Bankruptcy Court erred in following well-settled Florida law when it denied MicroBilt's Motion to Amend and subsequently dismissed the Trade Secret Claims

---

[11] Here again, MicroBilt ignored holdings of the Bankruptcy Court requiring such specificity in response to motions to dismiss filed by Chex in other litigation (*See generally*, Bankr. D.N.J. A-11-2488 and A-12-1167.)

(at MicroBilt's request) on the basis that the claims asserted therein are barred by Florida's absolute litigation immunity privilege. (*See* Opening Brief at 10-19.)

The Florida Supreme Court has repeatedly held that the litigation immunity privilege is broadly applied. *See, e.g., Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007)   MicroBilt does not assert a case suggesting that the Florida's litigation immunity privilege should be so narrowly construed.  Rather, in an argument that is supported by virtually no case law, MicroBilt contends the Bankruptcy Court should have employed California's litigation privilege which is different from the Florida law at issue here. (*See* Opening Brief at 14.)  As the Bankruptcy Court's decision is grounded in well-settled Florida law, the Bankruptcy Court clearly did not abuse its discretion in determining that the Trade Secret Claims are barred by Florida's absolute litigation immunity privilege.

To avoid repetition, Chex hereby incorporates by reference the case law and arguments delineating the scope of the litigation privilege in Florida as set forth by the Gunster Defendants in the Gunster Motion for Summary Judgment (*see* MicroBilt App. Ex. 7)  and in the appellee brief filed by the Gunster Defendants contemporaneously herewith. However for clarity, well-settled, precedential Florida law holds that "'Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding … so long as the act has some relation to

the proceeding.'" *See Echevarria*, 950 So. 2d at 384 (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Company*, 639 So. 2d 606, 608 (Fla. 1994).)   The justification for that privilege is clear:

> Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin*, 639 So.2d at 608. (*See also* MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 12.)   Recently, in *Echevarria*, the Florida Supreme Court made plain that the Florida absolute litigation immunity privilege applies to <u>all</u> actions in Florida, holding that "[t]he litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria*, 950 So.2d at 384.  (*See also* MicroBilt App. Ex. 15 (Tr. of Ruling Hrg.) at 15:1-5) ("The Court in Monroe specifically stated that the privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to or occurring within judicial proceedings.")

MicroBilt concedes – as it must - that the litigation privilege applies to preclude the Tortious Interference Counts. *Levin,* 639 So. 2d at 608 (applying the litigation immunity privilege to tortious interference claims).  In fact, MicroBilt's Opening Brief focuses only on whether the litigation privilege extends to the Trade

- 36 -

Secret Counts, attempting to differentiate them from tortious interference claims. (*See generally* Opening Brief.) Yet despite the strained distinction sought by MicroBilt, the Florida Supreme Court clearly held that the litigation privilege applies to statutory claims. *Echevarria*, 950 So.2d at 384.

Here, the Bankruptcy Court noted that each of the claims that MicroBilt would assert in the Proposed Amended Complaint are premised upon Chex providing its legal counsel with information it deemed necessary to draft and file the Florida Complaint. (*See* MicroBilt App. Ex. 33 (Tr. of Reconsideration Ruling Hrg.) at 40.) In particular, each of the Trade Secret Counts are premised upon the drafting and filing of the Florida Complaint. (*See* MicroBilt App. Ex. 16 at Ex. A (Proposed Am. Compl.), ¶¶ 63-68 (Count V entitled "Violation of Uniform Trade Secrets Act Regarding Disclosure of Information to Gunster and Wells"), ¶¶ 69-75 (Count VI premised upon filing Florida Complaint), ¶¶ 76-83 (Count VII premised upon filing Florida Complaint).) Because the actions underlying each claim are clearly related to the litigation in Florida, the Bankruptcy Court correctly recognized that the litigation privilege bars the alleged claims premised upon such actions. (*See* MicroBilt App. Ex. 33 (Tr. of Reconsideration Ruling Hrg.) at 40-41.) Accordingly, the Bankruptcy Court did not abuse its discretion in finding that amendment of the Tortious Interference Counts would be futile.

When presented with the Gunster Summary Judgment Motion, the Bankruptcy Court correctly recognized the breadth of the litigation privilege in Florida and held that misappropriation of trade secret claims asserted against the Gunster Defendants were precluded by application of the litigation privilege. (MicroBilt App. Ex. 14 (Tr. of Ruling Hrg.) at 14.) When faced again with MicroBilt's attempt to replead identical claims against Chex in the Proposed Amended Complaint, the Bankruptcy Court again correctly interpreted and applied the Florida Supreme Court's holdings in *Levin* and *Echevarria* and held that the Trade Secret Counts "are premised on the same factual scenario of documents being provided by Chex to Gunster, and then attached to pleadings filed in Florida litigation, that the litigation privilege that's in effect in Florida pursuant to statute and common law would protect Chex, as well as the Gunster Defendants." (MicroBilt App. 33 (Tr. of Reconsideration Ruling Hrg.) at 40). The Bankruptcy Court simply cannot be said to have abused its discretion in relying upon well-settled Florida law.

Instead of following precedential Florida law, MicroBilt would have the Bankruptcy Court follow California law which *statutorily* removes trade secret claims from the application of its litigation privilege. *See* Cal. Civ. Code § 3426.11 (the "California Statute"). The California Statute was enacted after an appellate court in California held that the litigation privilege applied to preclude a

misappropriation of trade secret claim. *See ITT Telecom Products v. Dooley*, 214 Cal. App. 3d 307, 323 (Cal. App. 1989) ("We hold that the [litigation] privilege applies to ITT's tort claim of unauthorized disclosure of trade secrets."). The California Statute represents California demonstrated intent to statutorily limit the scope of the litigation privilege as applied by its courts – which is unlike anything in Florida.

MicroBilt does not, and cannot, point to any statute or case law in Florida demonstrating an intention to so limit the Florida's litigation privilege. In fact, Florida law clearly provides that "'Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding ... so long as the act has some relation to the proceeding.'" *See Echevarria*, , 950 So. 2d at 384. Unlike California, Florida has taken no steps to narrow the scope of the litigation privilege. The Bankruptcy Court properly reviewed Florida precedent and did not abuse its discretion in applying the litigation privilege to statutory actions. *Echevarria*, 950 So.2d at 384.

The discerned analysis of the Bankruptcy Court showed a pragmatic approach to this litigation and serves as the ultimate underpinning for its decision: "[t]he Court does not see it appropriate to await yet a new 12(b)(6) filing, or a 12(c) judgment on the pleadings motion, or another summary judgment motion, when the Court finds that --- and determines that the Florida litigation immunity

privilege applies not only to the Gunster defendants but to Chex." (MicroBilt App. Ex. 33 (Tr. of Reconsideration Ruling Hrg.) at 39). This well-reasoned conclusion is simply not an abuse of discretion. Accordingly, the Bankruptcy Court's decisions must be affirmed.

## VIII.  CONCLUSION

For the reasons set forth above, Chex respectfully requests that the Court affirm the Bankruptcy Court's Chex Motion to Dismiss Order, the Chex Reconsideration Order, the Motion to Amend Order and the July Chex Order.

Respectfully submitted,

Dated: October 14, 2013

By:   /s/ Derek J. Baker
Derek J. Baker, Esquire (DB8783)
Lauren S. Zabel, Esquire (12132010)
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: 609-987-0050
Fax: 609-951-0824

*Attorneys for Chex Systems, Inc.*